Yao Legal Group LLC
Dan Yao, Esq.
136-18 39th Avenue, Suite 1001
Flushing, NY 11354
Tel: (212) 392-5828
Fax: (212) 898-0373
Email: dyao@yaolawoffice.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- X

YUNQING LIN, *individually and on behalf of all others similarly situated*,

Plaintiff,

– against –

FIRST WOK CHEF INC. d/b/a FIRST WOK, FIRST WOK OF LITTLE FALLS, INC. d/b/a FIRST WOK, BAODI LIN a/k/a BAO DI LIN a/k/a BAO-DI LIN, CORPS 1-10, JOHN DOE a/k/a “YICHUAN” a/k/a “YIQUAN”, and JANE AND JOHN DOES 1-10,

Defendants.

------------------------------------------------------------------- X

Case No.: 1:26-cv-8568

**29 USCS § 216(b)**
**COLLECTIVE ACTION**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff YUNQING LIN (“Plaintiff”), individually and on behalf of all others similarly situated, by and through his attorneys, hereby brings this Complaint against Defendants FIRST WOK CHEF INC. d/b/a FIRST WOK, FIRST WOK OF LITTLE FALLS, INC. d/b/a FIRST WOK, BAODI LIN a/k/a BAO DI LIN a/k/a BAO-DI LIN, CORPS 1-10, JOHN DOE a/k/a “YICHUAN” a/k/a “YIQUAN”, and JANE AND JOHN DOES 1-10 (collectively, “Defendants”), and in support thereof alleges as follows:

## NATURE OF THE ACTION

1. This action is brought by Plaintiff, individually and on behalf of all others similarly situated, against FIRST WOK CHEF INC. d/b/a FIRST WOK, FIRST WOK OF

LITTLE FALLS, INC. d/b/a FIRST WOK, BAODI LIN a/k/a BAO DI LIN a/k/a BAO-DI LIN, CORPS 1-10, and JANE AND JOHN DOES 1-10 (collectively, "Defendant Employers"), for violations of the Fair Labor Standards Act ("FLSA"), 29 USCS §§ 201 *et seq.*, the New Jersey State Wage and Hour Law, N.J. Stat. §§ 34:11-56a *et seq.* ("NJWHL"), and the New Jersey Wage Payment Law, N.J. Stat. §§ 34:11-4.1 *et seq.* ("NJWPL") (the NJWHL and NJWPL are collectively referred to herein as the "New Jersey Wage Laws"), arising from Defendant Employers' various willful and unlawful employment policies, patterns, and/or practices. Plaintiff also brings individual claims under the New Jersey Earned Sick Leave Law, N.J. Stat. §§ 34:11D-1 *et seq.*; N.J. Stat. § 34:15-39.1; the New Jersey Law Against Discrimination, N.J. Stat. §§ 10:5-1 *et seq.*; 42 USCS § 1981; and New Jersey common law.

2. Upon information and belief, Defendant Employers have willfully and intentionally committed widespread violations of the FLSA and the New Jersey Wage Laws by engaging in a pattern and practice of failing to pay their employees, including Plaintiff, overtime compensation at one and one-half (1.5) times the regular rate of pay for all hours worked in excess of forty (40) in each workweek.

3. At all relevant times, Defendant Employers willfully failed to record all of the time that Plaintiff and similarly situated employees worked, and failed to furnish Plaintiff and similarly situated employees with accurate wage notices and wage statements, or with any statement of wages at all.

4. Plaintiff alleges, pursuant to the FLSA, that he is entitled to recover from Defendant Employers: (1) unpaid overtime compensation; (2) liquidated damages; (3) prejudgment and post-judgment interest; and (4) reasonable attorneys' fees and costs.

5. Plaintiff further alleges, pursuant to the New Jersey Wage Laws, that he is entitled

to recover from Defendant Employers: (1) unpaid overtime compensation; (2) liquidated damages of up to two hundred percent (200%) of the wages owed; (3) prejudgment and post-judgment interest; and (4) reasonable attorneys' fees and costs.

6. Plaintiff further asserts individual claims against Defendant Employers for retaliatory and wrongful termination of his employment in violation of, inter alia, N.J. Stat. § 34:15-39.1 and, in the alternative, New Jersey common law prohibiting discharge in violation of public policy, an individual claim for violation of the New Jersey Earned Sick Leave Law, N.J. Stat. §§ 34:11D-1 *et seq.*, and an individual claim, pleaded in the alternative, for negligent hiring, supervision, and retention arising out of a violent workplace attack upon Plaintiff on or about May 1, 2026.

7. Plaintiff further asserts individual claims against Defendant JOHN DOE a/k/a "YICHUAN" a/k/a "YIQUAN" for the assault and battery he committed upon Plaintiff on or about May 1, 2026.

**<u>JURISDICTION AND VENUE</u>**

8. This Court has original subject-matter jurisdiction over Plaintiff's FLSA and 42 USCS § 1981 claims pursuant to 29 USCS § 216(b), 42 USCS § 1981, and 28 USCS § 1331, and has supplemental jurisdiction over Plaintiff's New Jersey Wage Law, New Jersey Law Against Discrimination, New Jersey Earned Sick Leave Law, N.J. Stat. § 34:15-39.1, and state common-law claims (including Plaintiff's claims for assault, battery, and negligent hiring, supervision, and retention) pursuant to 28 USCS § 1367(a), because those claims are so related to the FLSA claims that they form part of the same case or controversy.

9. This Court has personal jurisdiction over Defendant Employers because they transact business within the State of New York within the meaning of CPLR § 302(a)(1), and the

claims asserted herein arise out of and relate to those transactions. Among other things, Defendant Employers purposefully recruited employees, including Plaintiff, from within the State of New York through an employment agency located in Manhattan; regularly contracted with and procured goods and services from suppliers and a certified public accountant located in New York; arranged and paid for the regular transportation of Plaintiff and other employees into and out of New York; and Defendant BAODI LIN a/k/a BAO DI LIN owns real property located in Kings County, New York. New York does not recognize the fiduciary-shield doctrine, and the New York contacts undertaken by Defendant BAODI LIN a/k/a BAO DI LIN on behalf of the Corporate Defendants therefore subject him to personal jurisdiction in this State individually.

10. This Court also has personal jurisdiction over Defendant JOHN DOE a/k/a "Yichuan" a/k/a "Yiquan" ("Defendant Yichuan"). Upon information and belief, Defendant Yichuan resides in and is domiciled in New York County, in the State of New York, which lies within this District, and this Court therefore has general personal jurisdiction over him. In addition, Plaintiff's claims against Defendant Yichuan arise out of the same transaction, occurrence, or series of transactions or occurrences, and present questions of law and fact common to the claims against Defendant Employers, and Defendant Yichuan is properly joined as a defendant under USCS Fed Rules Civ Proc R 20(a)(2).

11. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 USCS § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Defendant Employers recruited Plaintiff for the employment at issue through an employment agency located in Manhattan, New York; Plaintiff resides in Bronx County, New York; and a substantial part of the events of May 1, 2026 occurred in Bronx County, New York.

## THE PARTIES

**Plaintiff**

12. Plaintiff YUNQING LIN is an adult individual residing in Bronx County, in the State of New York.

13. At all relevant times, Plaintiff was employed by Defendant Employers at a restaurant known as First Wok, located at 13 Stevens Ave, Little Falls, NJ 07424 (the "Restaurant"), as a chef, whose duties included cooking, stir-frying, and preparing food in the Restaurant's kitchen.

14. At all relevant times, Plaintiff was an "employee" within the meaning of Section 3(e)(1) of the FLSA, 29 USCS § 203(e)(1), and within the meaning of the New Jersey Wage Laws, including N.J. Stat. § 34:11-56a1(h).

**Corporate Defendants**

15. Upon information and belief, Defendant FIRST WOK CHEF INC. d/b/a FIRST WOK is a domestic profit corporation incorporated under the laws of the State of New Jersey, with a principal place of business at 13 Stevens Ave, Little Falls, NJ 07424.

16. Upon information and belief, Defendant FIRST WOK OF LITTLE FALLS, INC. d/b/a FIRST WOK is a domestic profit corporation incorporated under the laws of the State of New Jersey, with a principal place of business at 13 Stevens Ave, Little Falls, NJ 07424.

17. Upon information and belief, at all relevant times the Corporate Defendants did and continue to do business under the trade name "First Wok," at the same location, serving substantially the same customers, using substantially the same menu, and owned, managed, and controlled by substantially the same individuals, and are therefore a single and/or joint employer and successors in interest to one another.

18. Upon information and belief, at all relevant times each Corporate Defendant was an enterprise engaged in interstate commerce that had gross annual sales in excess of one million dollars ($1,000,000.00) and whose employees handled, sold, or otherwise worked on goods and materials that had been moved in or produced for interstate commerce, including seafood, poultry, flour, and other dry goods regularly purchased from suppliers located in New York. In addition, and in the alternative, the Corporate Defendants and Defendant Lin together constitute a single enterprise within the meaning of 29 USCS § 203(r), engaged in related activities performed through unified operation and common control for a common business purpose, which had an annual gross volume of sales in excess of one million dollars ($1,000,000.00).

19. Each Corporate Defendant is therefore an "enterprise engaged in commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 USCS § 203(s)(1), and an "employer" within the meaning of Section 3(d) of the FLSA, 29 USCS § 203(d), and of the New Jersey Wage Laws at all relevant times.

20. Defendants CORPS 1-10 are fictitious names for currently unidentified corporations, partnerships, or other business entities that owned, operated, or controlled the Restaurant and jointly employed Plaintiff, whose true identities are presently unknown to Plaintiff and shall be substituted when ascertained through discovery.

**Individual Defendants**

21. Upon information and belief, Defendant BAODI LIN a/k/a BAO DI LIN ("Defendant Lin") is an adult individual who, at all relevant times, was an owner, officer, principal, and/or managing agent of the Corporate Defendants.

22. At all relevant times, Defendant Lin (1) had the power to hire and fire employees of the Corporate Defendants, including Plaintiff; (2) supervised and controlled employee work

schedules and conditions of employment; (3) determined the rate and method of payment of employees; and (4) maintained, or was responsible for maintaining, employee records.

23. Defendant Lin acted intentionally and is an "employer" within the meaning of Section 3(d) of the FLSA, 29 USCS § 203(d), and the regulations promulgated thereunder, 29 CFR § 791.2; as well as under the New Jersey Wage Laws, and is jointly and severally liable with the Corporate Defendants for the violations alleged herein.

24. Defendant Yichuan is an adult individual, presently identifiable to Plaintiff only by the phonetic alias "Yichuan" or "Yiquan", whose true legal name is currently unknown to Plaintiff and shall be substituted by amendment when ascertained.

25. Upon information and belief, Defendant Yichuan resides in New York County, in the State of New York.

26. Upon information and belief, Defendant Yichuan is a fellow townsman of Defendant Lin, and was employed by Defendant Employers as a chef in the Restaurant beginning in or about May 2025.

27. Defendant Yichuan is sued in his individual capacity for the assault and battery he committed upon Plaintiff on or about May 1, 2026, as alleged herein.

28. Defendants JANE AND JOHN DOES 1-10 are fictitious names for currently unidentified individuals (other than Defendant Yichuan) who, at relevant times, were owners, officers, managers, employees, and/or agents of the Corporate Defendants and/or Defendant Lin and jointly employed Plaintiff, whose true identities are presently unknown to Plaintiff and shall be substituted when ascertained.

## STATEMENT OF FACTS

**Defendant Employers Jointly Employed Plaintiff at the First Wok Restaurant**

29. At all relevant times, Defendant Employers owned, operated, managed, and/or controlled a Chinese restaurant doing business as "First Wok," located at 13 Stevens Ave, Little Falls Township, NJ 07424.

30. At all relevant times, Defendant Employers jointly hired the Restaurant's employees, set their schedules, directed their daily work, supervised the manner in which they performed their duties, determined their rates and methods of pay, and provided the equipment and workplace necessary for the work.

31. Defendant Employers managed, supervised, paid, controlled, and directed the same or an overlapping set of employees interchangeably in the operation of the Restaurant, without meaningful corporate distinctions or formalities.

**Defendant Employers Recruited Plaintiff From New York**

32. Upon information and belief, Defendant Employers regularly recruited restaurant workers from New York City.

33. Upon information and belief, Defendant Lin, acting on behalf of the Corporate Defendants, contacted an employment agency located in Manhattan, New York, for the purpose of recruiting employees for the Restaurant.

34. Plaintiff was recruited for and obtained his employment with Defendant Employers through that Manhattan-based employment agency.

**The Restaurant's Staff, Employee Housing, and Transportation to New York**

35. Upon information and belief, the Restaurant employed at most approximately seven (7) employees at a time, including no more than three (3) chefs, together with no more than three (3) front-of-house staff and one (1) delivery driver.

36. Upon information and belief, at all relevant times, five (5) to six (6) of the

Restaurant's employees, including Plaintiff, resided in living quarters located above the Restaurant, which contained approximately seven (7) rooms.

37. As part of the employment relationship, Defendant Employers arranged and paid for the regular transportation of Plaintiff and other New York-resident employees between the Restaurant in New Jersey and New York, so that such employees could periodically return to visit their families in New York.

38. Upon information and belief, before the COVID-19 pandemic, Defendant Employers paid the delivery driver approximately two hundred dollars ($200.00) per month to transport Plaintiff and other employees to and from Chinatown, New York on a weekly basis; after Plaintiff moved to the Bronx, he commuted on his own.

**Plaintiff's Work Schedule and Defendant Employers' Pay Practices**

39. Plaintiff was employed by Defendant Employers at the Restaurant from on or about July 2015 to on or about May 1, 2026, except that Plaintiff did not work from approximately April 2020 through November 2020 due to the COVID-19 pandemic.

40. Throughout his employment, Plaintiff regularly worked approximately six (6) days per week, taking approximately one (1) day off per week. Prior to approximately 2020, Plaintiff usually took Sunday off each week so that he could be transported to New York City Chinatown by the delivery driver who also took Sunday off. Beginning in or about 2020, all employees were given Tuesdays off.

41. Plaintiff's regular daily schedule was from 10:30 a.m. to 10:00 p.m. Monday through Thursday, from 10:30 a.m. to 10:30 p.m. Friday and Saturday, and from 11:30 a.m. to 10:00 p.m. on Sunday, with only three brief meal breaks of approximately ten (10) minutes each per day. As a result, Plaintiff regularly worked between approximately sixty-eight and one-half

(68.5) and seventy (70) hours per week prior to approximately 2020, and approximately sixty-nine (69) hours per week thereafter, in each case far in excess of forty (40) hours per week.

42. Throughout his employment, Defendant Employers paid Plaintiff a fixed monthly salary, in cash, mostly at the beginning of the following month, sometimes at the end of the month, regardless of the number of hours he actually worked. Defendant Employers paid Plaintiff approximately $4,000 per month beginning in or about July 2015, when he was recruited. The salary gradually increased over time. Plaintiff was paid $4,500 per month beginning in or about May 2022; $5,000 per month beginning in or about April 2024; and $5,200 per month beginning in or about April 2025. On May 1, 2026, Plaintiff received his April 2026 salary of $5,200, together with $200 for his work on May 1, 2026, which was the last payment Plaintiff received from Defendant Employers.

43. At all relevant times, Defendant Employers failed to pay Plaintiff overtime compensation at one and one-half (1.5) times his regular rate of pay for hours worked in excess of forty (40) per workweek.

44. Upon information and belief, Defendant Employers applied the same or substantially similar unlawful pay practices to other non-exempt employees of the Restaurant.

45. Since October 29, 2018, the effective date of the New Jersey Earned Sick Leave Law, Plaintiff regularly worked far more than thirty (30) hours per week and therefore accrued the maximum of forty (40) hours of earned sick leave in each benefit year. Defendant Employers, however, never provided Plaintiff with any paid earned sick leave, never informed Plaintiff of his right to earned sick leave, and, upon information and belief, never posted or distributed the notice of employee rights required under that law.

46. Instead, Defendant Employers maintained no sick-leave policy of any kind and,

upon information and belief, deducted pay from employees, including Plaintiff, for days on which they were absent due to illness.

**Defendant Employers Failed To Keep Records or Provide Wage Notices and Statements**

47. At all relevant times, Defendant Employers knowingly and willfully failed to keep full and accurate records of the hours worked by, and wages paid to, Plaintiff and similarly situated employees.

48. At the time of hire and thereafter, Defendant Employers failed to furnish Plaintiff with any written notice, in English or in Chinese (the primary language identified by Plaintiff), setting forth his rate or rates of pay, the basis thereof, the regular payday, and the name, address, and telephone number of the employer.

49. At all relevant times, Defendant Employers failed to furnish Plaintiff with accurate statements of wages with each payment of wages, listing the dates of work covered, the hours worked, the rate or rates of pay, gross and net wages, and any deductions.

50. Upon information and belief, Defendant Employers issued no wage-and-tax statements (IRS Form W-2) or other tax or wage documents to Plaintiff for the years 2015, 2016, 2024, and 2025, further reflecting Defendant Employers' failure to keep and furnish required wage records.

51. For tax year 2017, Defendant Employers issued Plaintiff an IRS Form 1099 reporting his wages as non-employee compensation, thereby misclassifying Plaintiff, who at all times was their employee, as an independent contractor.

52. Defendant Employers' failure to keep and furnish adequate and accurate records was willful and undertaken in order to conceal and facilitate their exploitation of Plaintiff's labor and to mitigate their liability for wage violations.

53. Upon information and belief, Defendant Employers maintained only fake, non-functioning surveillance cameras at the Restaurant, and kept no accurate records of the hours worked by or wages paid to Plaintiff.

**The May 1, 2026 Assault and Battery Upon Plaintiff**

54. On or about May 1, 2026, at approximately 4:15 p.m., while Plaintiff was performing his work at the Restaurant, Defendant Yichuan struck Plaintiff on the head twice with a metal wok ladle following a dispute over a food order. On the second blow, Plaintiff's hand fell into a pot of frying oil heated to over 100 Celsius degrees; after Plaintiff pulled his hand from the oil, Defendant Yichuan shoved Plaintiff, causing Plaintiff's foot to strike and be scraped by the stove burner.

55. As a direct and proximate result of the attack, Plaintiff suffered serious physical injuries, including severe burns to his hand from the hot oil, head trauma resulting in persistent headaches, and an injury to his foot.

56. Upon information and belief, on the night of May 1, 2026, Defendant Lin drove Plaintiff from New Jersey to Plaintiff's residence in the Bronx, New York; when the shelter at which Plaintiff resided would not permit him to enter that night due to the severity of his injuries, Defendant Lin drove Plaintiff back to New Jersey, where Plaintiff stayed overnight in the living quarters located above the Restaurant.

57. On May 1, 2026 at around 11:00 pm, Plaintiff informed Defendant Lin of a severe headache and hand pain and requested that the assailant pay for medical treatments and loss of earnings. Defendant Lin stated that the assailant had no money to pay. He gave Plaintiff $500 and directed Plaintiff to seek treatment at a private clinic the following day, stating that he believed the injuries were not severe. On May 2, 2026 morning, Defendant Lin dropped Plaintiff

at a public-transportation station in New Jersey, from which Plaintiff traveled home on his own.

58. Plaintiff sought medical treatment at several private clinics in New York City Chinatown, but he was denied treatment because of the severity of his injuries. Plaintiff ultimately obtained treatment at a New Jersey hospital on May 2, 2026, where hospital staff reported the assault to the police; when the police went to the Restaurant, the assailant was not present, and Defendant Lin refused to provide the assailant's name and contact information.

59. Upon information and belief, Defendant Employers knew or should have known that the assailant, Defendant Yichuan, had a propensity for violent or dangerous conduct, yet negligently hired, retained, and supervised him and failed to provide a safe workplace, proximately causing Plaintiff's injuries.

**Plaintiff's Termination**

60. At approximately 5:00 p.m. on May 1, 2026, immediately after the attack, Defendant Employers terminated Plaintiff's employment, stating as the reason that Plaintiff had been arguing with others.

61. Defendant Employers refused Plaintiff's request to file a workers' compensation claim for his injuries, asserting that Plaintiff could not be covered because he lacked immigration status.

62. Upon information and belief, Defendant Employers failed to secure workers' compensation coverage for Plaintiff and their other employees, as required by N.J. Stat. §§ 34:15-71 and 34:15-72, and misrepresented Plaintiff as an independent contractor, each in violation of N.J. Stat. § 34:15-79(a). Under that section, Defendant Lin, as the president of the Corporate Defendants who was actively engaged in their business, is liable for the failure to secure such coverage.

63. Upon information and belief, Defendant Employers terminated Plaintiff's employment in retaliation for, and because of, Plaintiff's workplace injury and his pursuit of medical treatment and related legal rights, in violation of law and public policy.

64. Upon information and belief, Defendant Employers discharged Plaintiff within hours of his workplace injury in order to avoid liability for, and in anticipation of, his claim for workers' compensation benefits, and thereafter refused his request to file such a claim, in violation of N.J. Stat. § 34:15-39.1.

**Defendant Employers Exploited and Harassed Plaintiff Because of His Immigration Status and National Origin**

65. At all relevant times, Plaintiff is a Chinese national and immigrant who, upon information and belief, lacked lawful immigration status, a fact known to Defendant Employers and repeatedly used by Defendant Employers against him.

66. Defendant Employers exploited Plaintiff's immigration status by paying him substandard wages off the books and in cash, failing to provide wage documents, issuing improper tax forms, and denying him the protections of law. When Plaintiff protested his mistreatment following the May 1, 2026 assault, Defendant Lin told Plaintiff that reporting the assault to the police would be "useless" because Plaintiff "had no status."

67. Defendant Employers refused to identify Plaintiff's assailant to the police and refused Plaintiff's request to file a workers' compensation claim, in each instance asserting that Plaintiff could not avail himself of such protections because he lacked immigration status. Defendant Employers subjected Plaintiff to these and other abusive conditions of employment because of his national origin, nationality, ancestry, and status as a noncitizen.

## FLSA COLLECTIVE ACTION ALLEGATIONS

68. Plaintiff brings the First Cause of Action, FLSA Claims, on behalf of himself and all other current and former non-exempt employees who have been or were employed by Defendant Employers at the Restaurant at any time within the three (3) years prior to the filing of this Complaint through the entry of judgment in this action, and who were not paid the applicable overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

69. At all relevant times, Plaintiff and the Collective Action Members are similarly situated in that they have substantially similar job duties and were subject to Defendant Employers' common policy and practice of willfully failing and refusing to pay overtime compensation in violation of the FLSA.

70. Defendant Employers are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the Collective Action Members.

71. The FLSA Claims are properly brought under and maintained as an opt-in collective action pursuant to FLSA § 16(b), 29 USCS § 216(b). The Collective Action Members are readily ascertainable. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendant Employers. Notice can be provided to the Collective Action Members via first class mail to the last address known to Defendant Employers.

## STATEMENT OF CLAIMS

### COUNT I
### Violation of the Fair Labor Standards Act — Unpaid Overtime
### (Brought on behalf of Plaintiff and the Collective Action Members, against Defendant Employers)

72. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

73. The FLSA required Defendant Employers to compensate Plaintiff and the Collective Action Members at a rate of not less than one and one-half (1.5) times their regular rate of pay for all hours worked in excess of forty (40) in a workweek. 29 USCS § 207(a).

74. At all relevant times, Defendant Employers had a policy and practice of failing to pay overtime compensation to Plaintiff and the Collective Action Members for hours worked in excess of forty (40) per workweek, in willful violation of the FLSA. Defendant Employers are liable for the unpaid overtime, an additional equal amount as liquidated damages, interest, and reasonable attorneys' fees and costs pursuant to 29 USCS § 216(b).

**COUNT II**

**Violation of the New Jersey Wage Payment Law — Failure To Pay Wages and Failure To Keep and Furnish Records, Notices, and Statements**

**(Brought on behalf of Plaintiff, individually, against Defendant Employers)**

75. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

76. The New Jersey Wage Payment Law, N.J. Stat. §§ 34:11-4.1 *et seq.*, required Defendant Employers to pay Plaintiff the full amount of wages due on regular paydays, and to keep and furnish accurate records and statements of wages and hours.

77. Defendant Employers failed to pay Plaintiff all wages due, failed to keep accurate records of hours worked and wages paid, and failed to furnish Plaintiff with lawful wage notices and wage statements, in violation of the NJWPL. Defendant Employers are liable for all wages unlawfully withheld, statutory liquidated damages, interest, and reasonable attorneys' fees and costs as provided by the NJWPL.

**COUNT III**

**Retaliatory and Wrongful Termination (including N.J. Stat. § 34:15-39.1)**

**(Brought on behalf of Plaintiff, individually, against Defendant Employers)**

78. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs

as though fully set forth herein.

79. Defendant Employers terminated Plaintiff's employment because of, and in retaliation for, Plaintiff's exercise or attempted exercise of rights protected by law, including his pursuit of wages lawfully owed and/or his workplace injury and pursuit of medical treatment, his claim or attempted claim for workers' compensation benefits, and related legal rights.

80. N.J. Stat. § 34:15-39.1 makes it unlawful for an employer to discharge, or in any other manner discriminate against, an employee as to his employment because the employee has claimed or attempted to claim workers' compensation benefits, and an employee so discharged may maintain a civil action for damages and reinstatement. *Lally v Copygraphics*, 85 NJ 668, 428 A2d 1317 [1981].

81. Defendant Employers' termination of Plaintiff's employment was unlawful, retaliatory, and in violation of the anti-retaliation provisions of the FLSA, 29 USCS § 215(a)(3), and/or the New Jersey Wage Laws, N.J. Stat. § 34:15-39.1, and the public policy of the State of New Jersey. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other damages, and is entitled to compensatory damages, liquidated and/or punitive damages where permitted, reinstatement or front pay, and reasonable attorneys' fees and costs.

**COUNT IV**
**<u>Wrongful Discharge in Violation of Public Policy (Pleaded in the Alternative to Count III)</u>**
**(Brought on behalf of Plaintiff, individually, against Defendant Employers)**

82. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

83. This Count is pleaded in the alternative to Count III pursuant to USCS Fed Rules Civ Proc R 8(d)(2)–(3).

84. Under New Jersey common law, an employer may not discharge an at-will employee in violation of a clear mandate of public policy. *Pierce v Ortho Pharm. Corp.*, 84 NJ 58, 417 A2d 505 [1980].

85. The New Jersey Workers' Compensation Act, N.J. Stat. §§ 34:15-1 *et seq.*, embodies a clear mandate of public policy that employees injured in the course of their employment receive medical treatment and compensation for their injuries, that employers bear the cost of such injuries, and that employers not discharge or otherwise penalize injured employees in order to evade those obligations. *See* N.J. Stat. § 34:15-39.1; *Lally v Copygraphics*, 85 NJ 668, 428 A2d 1317 [1981].

86. Defendant Employers discharged Plaintiff at approximately 5:00 p.m. on May 1, 2026, within approximately one hour after he suffered serious injuries while working in the Restaurant's kitchen, in order to avoid their obligation to provide medical treatment and workers' compensation benefits for those injuries, and thereafter refused Plaintiff's request to file a workers' compensation claim.

87. To the extent Plaintiff's discharge is found to fall outside N.J. Stat. § 34:15-39.1 because it preceded any formal claim or attempted claim for workers' compensation benefits, Defendant Employers' discharge of Plaintiff nevertheless violated the clear mandate of public policy described above.

88. Defendant Employers acted with actual malice or with wanton and willful disregard of Plaintiff's rights, entitling Plaintiff to punitive damages. *See* N.J. Stat. § 2A:15-5.12.

89. As a direct and proximate result of Defendant Employers' wrongful discharge of Plaintiff, Plaintiff has suffered lost wages and benefits, emotional distress, and other damages, and is entitled to compensatory and punitive damages.

**COUNT V**
**Negligent Hiring, Supervision, and Retention (Pleaded in the Alternative)**
**(Brought on behalf of Plaintiff, individually, against Defendant Employers)**

90. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

91. This Count is pleaded in the alternative pursuant to USCS Fed Rules Civ Proc R 8(d)(2)–(3), to the extent Plaintiff's injuries are determined not to be compensable under the New Jersey Workers' Compensation Act, N.J. Stat. §§ 34:15-1 *et seq.*, such that the exclusivity provision of N.J. Stat. § 34:15-8 does not bar this claim.

92. Defendant Employers owed Plaintiff a duty to exercise reasonable care in the hiring, supervision, and retention of their employees, and to provide a reasonably safe workplace.

93. Defendant Employers knew or, in the exercise of reasonable care, should have known that Defendant Yichuan was unfit or posed a risk of harm to others, yet Defendant Employers negligently hired, supervised, and retained him and failed to take reasonable measures to protect Plaintiff.

94. As a direct and proximate result of Defendant Employers' negligence, Plaintiff was assaulted and battered and suffered serious physical injuries and damages, for which Defendant Employers are liable.

**COUNT VI**
**Assault**
**(Brought on behalf of Plaintiff, individually, against Defendant John Doe a/k/a "Yichuan" a/k/a "Yiquan")**

95. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

96. On or about May 1, 2026, Defendant Yichuan intentionally acted so as to place

Plaintiff in apprehension of an imminent harmful and offensive bodily contact, without Plaintiff's consent and without lawful justification, when he raised a metal wok ladle against Plaintiff and attacked him in the Restaurant's kitchen.

97. As a direct and proximate result of the assault, Plaintiff suffered physical injury, pain and suffering, emotional distress, and other damages. Because the conduct was willful, wanton, and malicious, Plaintiff is entitled to compensatory and punitive damages.

**COUNT VII**
**<u>Battery</u>**
**(Brought on behalf of Plaintiff, individually, against Defendant John Doe a/k/a "Yichuan" a/k/a "Yiquan")**

98. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

99. On or about May 1, 2026, Defendant Yichuan intentionally made harmful and offensive bodily contact with Plaintiff, without Plaintiff's consent and without lawful justification, by striking Plaintiff on the head twice with a metal wok ladle and shoving him, thereby causing Plaintiff's hand to fall into a pot of hot frying oil and Plaintiff's foot to strike the stove burner.

100. As a direct and proximate result of the battery, Plaintiff suffered serious physical injuries, including burns to his hand, head trauma and persistent headaches, and an injury to his foot, together with pain and suffering, emotional distress, and other damages. Because the conduct was willful, wanton, and malicious, Plaintiff is entitled to compensatory and punitive damages.

**COUNT VIII**
**<u>Hostile Work Environment (New Jersey Law Against Discrimination and 42 USCS § 1981)</u>**
**(Brought on behalf of Plaintiff, individually, against Defendant Employers)**

101. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs

as though fully set forth herein.

102. At all relevant times, Plaintiff was a member of protected classes under the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. §§ 10:5-1 *et seq.*, on the basis of his national origin, nationality, and ancestry, and under 42 USCS § 1981 on the basis of his race, ethnicity (Chinese ancestry), and alienage.

103. Plaintiff was subjected to harassment — including a violent physical assault by Defendant Lin's fellow townsman in the Restaurant's kitchen, and Defendant Employers' repeated invocation of Plaintiff's lack of immigration status to deny him police protection, medical care, and workers' compensation — that was based on Plaintiff's protected characteristics and was sufficiently severe or pervasive to alter the conditions of his employment and to create an intimidating, hostile, and abusive working environment.

104. A reasonable person in Plaintiff's protected classes would consider the working conditions hostile or abusive, and Plaintiff so considered them. Defendant Employers created, encouraged, tolerated, and/or failed to remedy the hostile work environment, and are liable therefor.

105. As a direct and proximate result, Plaintiff suffered damages, including emotional distress, and is entitled to compensatory and punitive damages, together with reasonable attorneys' fees and costs pursuant to N.J. Stat. § 10:5-27.1 and 42 USCS § 1988.

**COUNT IX**

**<u>Discrimination Based on National Origin, Nationality, and Ancestry (New Jersey Law Against Discrimination)</u>**

**(Brought on behalf of Plaintiff, individually, against Defendant Employers)**

106. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

107. At all relevant times, Defendant Employers were "employers" within the meaning

of the NJLAD, which applies to all employers in New Jersey regardless of the number of persons they employ.

108. The NJLAD protects all employees, including undocumented workers, from discrimination in the terms, conditions, and privileges of employment on the basis of national origin, nationality, and ancestry. N.J. Stat. § 10:5-12(a).

109. Defendant Employers intentionally discriminated against Plaintiff in the terms, conditions, and privileges of his employment — including by paying him substandard wages off the books, denying him legally required protections and benefits, subjecting him to a hostile work environment, and terminating his employment — because of his national origin, nationality, ancestry, and immigration status, in violation of the NJLAD.

110. As a direct and proximate result, Plaintiff suffered damages and is entitled to compensatory and punitive damages, together with reasonable attorneys' fees and costs pursuant to N.J. Stat. § 10:5-27.1.

**COUNT X**
**Discrimination Based on Race, Ethnicity, and Alienage (42 USCS § 1981)**
**(Brought on behalf of Plaintiff, individually, against Defendant Employers)**

111. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

112. 42 USCS § 1981 guarantees to all persons within the jurisdiction of the United States the same right to make and enforce contracts — including the making, performance, modification, and termination of employment relationships — as is enjoyed by white citizens, and prohibits intentional discrimination on the basis of race, ethnicity, ancestry, and alienage, including by private employers. See *Anderson v. Conboy*, 156 F.3d 167 (2d Cir. 1998).

113. Defendant Employers intentionally discriminated against Plaintiff in the making,

performance, and termination of his employment relationship because of his race, ethnicity (Chinese ancestry), and alienage — that is, his status as a noncitizen who lacked lawful immigration status — including by subjecting him to inferior terms and conditions of employment, exploiting his immigration status, and terminating his employment.

114. As a direct and proximate result, Plaintiff suffered damages and is entitled to compensatory and punitive damages, together with reasonable attorneys' fees and costs pursuant to 42 USCS § 1988.

**COUNT XI**
**Violation of the New Jersey Earned Sick Leave Law**
**(Brought on behalf of Plaintiff, individually, against Defendant Employers)**

115. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

116. At all relevant times since October 29, 2018, Defendant Employers were "employers" and Plaintiff was an "employee" within the meaning of the New Jersey Earned Sick Leave Law, N.J. Stat. §§ 34:11D-1 *et seq.*, which applies to employers in New Jersey regardless of the number of persons they employ.

117. The New Jersey Earned Sick Leave Law requires employers to provide each employee with earned sick leave accruing at a rate of not less than one (1) hour for every thirty (30) hours worked, up to forty (40) hours per benefit year, to be paid at the same rate of pay and with the same benefits as the employee normally earns. N.J. Stat. § 34:11D-2.

118. Defendant Employers violated the New Jersey Earned Sick Leave Law by failing to provide Plaintiff with any earned sick leave, failing to notify Plaintiff of his rights under that law, and deducting pay for absences due to illness.

119. Pursuant to N.J. Stat. § 34:11D-4, Defendant Employers are subject to the

penalties and remedies provided by the New Jersey State Wage and Hour Law, and Plaintiff is entitled to recover all wages unlawfully withheld or deducted, liquidated damages, and reasonable attorneys' fees and costs.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment and grant the following relief:

**On the claims against Defendant Employers, jointly and severally:**

a. Designating this action as a collective action under the FLSA, 29 USCS § 216(b), and directing the issuance of notice to the Collective Action Members;

b. Awarding Plaintiff and the Collective Action Members their unpaid overtime compensation;

c. Awarding liquidated damages under the FLSA in an amount equal to the unpaid wages, and liquidated damages under the New Jersey Wage Laws of up to two hundred percent (200%) of the wages owed;

d. Awarding all wages unlawfully withheld and statutory damages under the New Jersey Wage Payment Law;

e. Awarding Plaintiff compensatory damages, and liquidated, punitive, and/or exemplary damages where permitted, together with reinstatement or front pay, on his claim for retaliatory and wrongful termination, including under N.J. Stat. § 34:15-39.1 and, in the alternative, for wrongful discharge in violation of public policy;

f. Awarding Plaintiff compensatory and punitive damages on his claim for negligent hiring, supervision, and retention, pleaded in the alternative;

g. Awarding Plaintiff compensatory and punitive damages, and reasonable attorneys' fees and costs, on his claims for hostile work environment and for discrimination under the New Jersey Law Against Discrimination and 42 USCS § 1981, pursuant to N.J. Stat. § 10:5-27.1 and 42 USCS § 1988;

h. Awarding Plaintiff all relief available under the New Jersey Earned Sick Leave Law, N.J. Stat. §§ 34:11D-1 *et seq.*, including all wages unlawfully withheld or deducted, liquidated damages, and reasonable attorneys' fees and costs;

**On the claims against Defendant John Doe a/k/a "Yichuan" a/k/a "Yiquan":**

i. Awarding Plaintiff compensatory and punitive damages on his claims for assault and battery against Defendant JOHN DOE a/k/a "Yichuan" a/k/a "Yiquan";

**On all claims:**

j. Awarding prejudgment and post-judgment interest as permitted by law;

k. Awarding Plaintiff's reasonable attorneys' fees and costs of this action; and

l. Granting such other and further relief as the Court deems just and proper.

Dated: Queens, New York
September 29, 2026

Respectfully submitted,

**YAO LEGAL GROUP LLC**

Dan Yao

By: Dan Yao, Esq.
13618 39th Avenue, Suite 1001
Flushing, New York 11354

Tel: (212) 392-5828
dyao@yaolawoffice.com
*Attorneys for Plaintiff*